UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| FIGHT FOR NEVADA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:20-cv-00837-RFB-EJY |
| ) | |
| BARBARA CEGAVSKE, in her official capacity ) | Judge: Hon. Richard F. Boulware, II |
| as the Secretary of State of Nevada, ) | |
| ) | Magistrate: Hon. Elayna J. Youchah |
| ) | |
| Defendant. ) | |

**EMERGENCY MOTION FOR PRELIMINARY INJUNCTION AND/OR TEMPORARY RESTRAINING ORDER AND ATTACHED MEMORANDUM OF LAW IN SUPPORT**

Pursuant to Federal Rules of Civil Procedure 65(a) and (b), Local Rule 7-4, and in view of the public health crisis precipitated by the coronavirus pandemic known as COVID-19 and the ensuing emergency measures adopted by the State of Nevada, Plaintiff respectfully moves the Court to enter a preliminary injunction and/or temporary restraining order that prohibits Defendant from enforcing or applying the May 14 deadline for submitting recall petitions established by NRS 306.015(3). Plaintiff further requests that the Court direct Defendant to grant them an extension of their deadline to submit recall petitions by an amount of time equal to the duration of Governor Sisolak's State of Emergency related to the coronavirus pandemic.

Plaintiff certifies that counsel for the Defendant has been contacted and provided copies of the Complaint, this Motion, the Supporting Declaration of Robert E. Barnes and Plaintiff's Proposed Order. Pursuant to the Local Rule 7-4, Plaintiff and Defendant agreed on May 12, 2020, that a meet and confer would be unnecessary for this matter. Plaintiff has requested of counsel for the Defendant a waiver of service of process under Federal Rule of Civil Procedure 4.

DATED:  May 12, 2020				Respectfully submitted,

 s/ Robert E. Barnes
Robert E. Barnes, CA SBN #235919
BARNES LAW
*Pro Hac Vice Pending*
601 South Figueroa Street, Suite 4050
Los Angeles, CA 90017
(310) 510-6211 – Main
(310) 510-6225 – Fax
robertbarnes@barneslawllp.com


 s/ Jeffrey Jaegar
Jeffrey Jaegar, NV SBS #13159
THE LAW OFFICES OF JEFFREY JAEGER
410 South Rampart Boulevard, Suite 390
Las Vegas, NV 89145
(702) 816-3888 – Main
(702) 441-1257 – Fax
jeff@jeffjaeger.com

## **MEMORANDUM OF LAW IN SUPPORT**

The COVID-19 pandemic has given rise to an extraordinary set of circumstances in Nevada and nationwide. In an effort to contain the virus and protect the public health, the State of Nevada has implemented several emergency measures that, although perhaps reasonable in light of the public health crisis, make it impossible for Plaintiff to comply with the statutory procedures they must follow to submit their petition to recall Governor Sisolak pursuant to NRS 306.015 et. seq. In particular, Plaintiff is required to circulate petitions, obtain the signatures of not less than 25% of the number of persons who actually voted in Governor Sisolak's election, and turn them in to Secretary for verification by May 14, 2020, 90-days after Plaintiff submitted their Notice of Intent on February 14, 2020. *See* NRS 306.015, et seq., Nev. Const. Art. 2, Sec. 9. That amounts to approximately 249,500 signatures due on May 14. Under the emergency measures now in place, Plaintiff cannot lawfully comply with these requirements.

On March 12, 2020, Governor Sisolak declared that Nevada was in a State of Emergency.[1] In his "Declaration of Emergency for COVID-19" he declared that "the State of Nevada is experiencing events that require a coordinated response for the health and safety of the public." *Id*. Three days later on Sunday March 15, 2020, Governor Sisolak issued the first of seventeen Declarations of Emergency Directives intended to combat the spread of COVID-19 in Nevada. Most relevant to the instant action are Emergency Directive 003, declared on March 20, 2020, which mandated the closure of all non-essential business in Nevada, and Emergency Directive 010, declared on March 31, 2020, which mandated that all Nevadans stay in their

---

[1] A true and correct copy of Governor Sisolak's "Declaration Of Emergency For COVID-19" can be found at http://gov.nv.gov/News/Emergency_Orders/2020/2020-03-12_-_COVID-19_Declaration_of_Emergency/

residences except for limited activity necessary for maintaining essential needs and services.[2] Collecting signatures on petitions is not included among the specified "essential" needs and services, and combined, the Emergency Orders have the effect of completely prohibiting Plaintiff's petitioning activities by closing down their petitioning sites and confining them to their homes.

On April 2, 2020, in response to multiple inquiries from Plaintiff's members, the Secretary of State's office, via an email from employee Troy Casa, informed Plaintiff that after consulting with the Attorney General's office, the Secretary of State concluded they would not be extending any deadlines for submitting petitions for the recall of a public official due to a lack of authority to do so. Plaintiff therefore urgently needs the relief requested herein, to protect their speech, petitioning, voting, associational and equal protection rights as guaranteed by the First and Fourteenth Amendments. In the absence of such relief, Plaintiff will suffer irreparable harm, because their recall effort will be rejected for lack of signatures and all of the time, money, and effort spent on their grassroots campaign will be wiped away as a result of circumstances completely out of their control.

## LEGAL ARGUMENT

### I.  **Plaintiff is Entitled to Preliminary Relief.**

A preliminary injunction should be granted if Plaintiff shows "(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is

---

[2] A true and correct copy of Emergency Directive 003 can be found at:
http://gov.nv.gov/News/Emergency_Orders/2020/2020-03-20_-_COVID-19_Declaration_of_Emergency_Directive_003/; A true and correct copy of Emergency Directive 010 "Stay At Home Order" can be found at:
http://gov.nv.gov/News/Emergency_Orders/2020/2020-03-31_-_COVID-19_Declaration_of_Emergency_Directive_010_-_Stay_at_Home_Order/

not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)." *Rodde v. Bonta*, 375 F.3d 988, 994 (9th. Cir. 2004). Alternately, the Court should grant injunctive relief wherever Plaintiff demonstrates "a combination of probable success on the merits and the possibility of irreparable injury" or "that serious questions are raised and the balance of hardships tips sharply in their favor." *Id*. All of these factors strongly counsel in favor of this Court's granting the Motion. The probability of success is high, as is the possibility of irreparable injury.

Similarly, this case raises serious questions and the balance of hardships tips heavily in Plaintiff's favor. Cases analogous to the present include cases involving the regulation of the ballot, which the United States Supreme Court has held involves fundamental First Amendment rights. *See Anderson v. Celebrezze*, 460 U.S. 780 (1983) ("*Anderson*").[3]

"Generally, in a First Amendment challenge, a plaintiff who meets the first prong of the test for a preliminary injunction will almost certainly meet the second, since irreparable injury normally arises out of the deprivation of speech rights." *American Civil Liberties Union v. Reno*, 217 F.3d 162, 180, (3d Cir. 2000) (internal citations and quotations omitted) ("*Reno*").

"As the Supreme Court has clearly stated, 'the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Reno* at 180, (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Similarly, in *Council of Alternative Political Parties v. Hooks*, 121 F.3d 876 (3d Cir. 1997), the Third Circuit held that the irreparable injury

---

[3] This case is analogous to ballot access cases not only because they implicate the same First and Fourteenth Amendment rights, but because this case is fundamentally a ballot access case. Under NRS 306.060, et seq., a successful recall campaign triggers a special election by which anyone may petition to nominate candidates for the special election.

prong was met because "if the plaintiffs lack an adequate opportunity to gain placement on the ballot . . . this infringement on their rights cannot be alleviated after the election." *Id*. at 883.

### A. Plaintiff Has a Strong Likelihood of Success on the Merits

The extraordinary circumstances from which this case arises make it an easy case to decide. Under Nevada law as it now exists, Plaintiff has no lawful procedure by which they may gather the necessary signatures for their recall campaign before their May 14 deadline. Plaintiff is entitled to the relief requested on that basis alone because Nevada's petitioning requirements, as applied here, cannot withstand constitutional scrutiny under the analytic framework the Supreme Court set forth in *Anderson*, 460 U.S. at 780, and *Burdick v. Takushi*, 504 U.S. 428 (1992). Under that analysis, a reviewing court must:

> first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

*Anderson*, 460 U.S. at 789. This framework establishes a "flexible standard," according to which the rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged restriction burdens First and Fourteenth Amendment rights." *Burdick*, 504 U.S. at 434. Under this standard, "reasonable, nondiscriminatory restrictions" are subject to less exacting review, whereas laws that impose "severe" burdens are subject to strict scrutiny. *See id*.

(citations omitted). But in every case, "However slight [the] burden may appear ... it must be justified by relevant and legitimate state interests sufficiently weighty to justify the limitation." *Crawford v. Marion County Election Bd.*, 128 S.Ct. 1610, 1616 (2008) (citation and quotation marks omitted).

As the Seventh Circuit has explained, "[m]uch of the action takes place at the first stage of *Anderson's* balancing inquiry," because the severity of the burden imposed is what determines whether strict scrutiny or a less demanding level of review applies. *Stone v. Board of Election Com'rs for City of Chicago*, 750 F.3d 678, 681 (7th Cir. 2014) (citing Burdick, 504 U.S. at 534). Here, the burden imposed could not be more severe: Nevada law as currently applied prohibits Plaintiff from engaging in any form of effective petitioning for almost the entire duration of Plaintiff's recall campaign, as Plaintiff filed their Notice of Intent, the commencing filing of its campaign, on February 14, 2020, whereas Governor Sisolak's State of Emergency was declared less than a month later on March 12, 2020. Such "complete exclusion," constitutes a "severe" burden on the First and Fourteenth Amendment rights of the affected voters, candidates and parties. *Burdick*, 504 U.S. at 434.

To be sure, Nevada has a strong and even compelling interest in protecting the public health during a pandemic. But no court has ever upheld an election law that completely prohibits the petitioning activity of a recall campaign. Because petition circulation is currently prohibited under Nevada law, and Nevada has failed to establish an alternative procedure by which Plaintiff may circulate petitions for their campaign, Nevada's petitioning requirements are unconstitutional as applied to Plaintiff during the current pandemic.

### B. Plaintiff Will Suffer Irreparable Harm if Preliminary Relief is Not Granted

The second prong of the test is easily satisfied in this case. If Plaintiff is not provided

emergency preliminary relief before the May 14 deadline established by NRS 306.015(3), they will not be able to meet the signature requirements established by the Nevada Constitution and their campaign for the recall of Governor Sisolak will be summarily denied. Nev. Const. Art. 2, Sec. 9. This will cause significant harm to Plaintiff's First Amendment rights that cannot be adequately remedied afterwards. *Anderson* at 787 (recognizing harm to voters' First Amendment rights of association when they are unable to vote for the candidates they support).

### C. The Balance of Hardships Undeniably Favors the Plaintiff as the Defendant Will Suffer No Harm From an Extension Being Granted in this Case

To be clear, Plaintiff is not seeking the complete invalidation of Nevada's laws regulating the process for the recall of a public official. Plaintiff in this case merely seeks an extension of their deadline equivalent to the duration of Governor Sisolak's declaration of a State of Emergency that made it impossible for Plaintiff to gather petition signatures. Plaintiff is hard pressed to think of any possible harm this limited emergency relief could cause Defendant. In fact, on April 1, 2020, in his revised Emergency Directive 009, Governor Sisolak mandated that any specific time limit set by state statute or regulation for the commencement of any legal action would be tolled from the date of the directive until 30 days from the date the state of emergency declared on March 12, 2020 is terminated.[4] If Nevada can withstand such a sweeping staying of all legal deadlines for commencing legal actions, then surely it can withstand the limited relief requested here – relief that will only affect the Plaintiff in this case.

### D. Preliminary Relief in in the Public Interest

Plaintiff's recall campaign is a grassroots volunteer effort based on legitimate disputes with several of Governor Sisolak's public policies. Whether or not their campaign succeeds

---

[4] A true and correct copy of Emergency Directive 009 can be found at: http://gov.nv.gov/News/Emergency_Orders/2020/2020-04-01_-_COVID-19_Declaration_of_Emergency_Directive_009_(Revised)/

depends on whether or not they can obtain the signatures of 250,000 Nevadans who share their view. Nevadans have a right to decide whether or not they wish to sign on to Plaintiff's campaign, and a summary denial of this campaign due to a public health emergency completely outside of the Plaintiff's control would deny them of this right. As the Third Circuit noted in an analogous case, "[i]n the absence of legitimate, countervailing concerns, the public interest clearly favors the protection of constitutional rights…" *Council of Alternative Political Parties*, 121 F.3d at 883-84.

## CONCLUSION

For the foregoing reasons, Plaintiff's request for a preliminary injunction and/or temporary restraining order that prohibits Defendant from enforcing or applying the May 14 deadline for submitting recall petitions and directs Defendant to grant an extension of Plaintiff's deadline to submit recall petitions by an amount of time equal to the duration of Governor Sisolak's State of Emergency related to the coronavirus pandemic should be granted. Without immediate injunctive relief, Plaintiff's recall campaign will be shuttered and their First and Fourteenth Amendment rights will be irreparably harmed.

DATED:  May 12, 2020                    Respectfully submitted,

  _s/ Robert E. Barnes_
Robert E. Barnes, CA SBN #235919
BARNES LAW
*Pro Hac Vice Pending*
601 South Figueroa Street, Suite 4050
Los Angeles, CA 90017
(310) 510-6211 – Main
(310) 510-6225 – Fax
robertbarnes@barneslawllp.com


  _s/ Jeffrey Jaegar_
Jeffrey Jaegar, NV SBS #13159
THE LAW OFFICES OF JEFFREY JAEGER
410 South Rampart Boulevard, Suite 390

Las Vegas, NV 89145
(702) 816-3888 – Main
(702) 441-1257 – Fax
jeff@jeffjaeger.com