Robert E. Barnes, Esq., CSB#: 235919
BARNES LAW
*Pro Hac Vice Pending*
601 South Figueroa Street, Suite 4050
(310) 510-6211 – Main
(310) 510-6225 – Fax
robertbarnes@barneslawllp.com

Jeffrey Jaegar, NV SBS #13159
THE LAW OFFICES OF JEFFREY JAEGER
410 South Rampart Boulevard, Suite 390
Las Vegas, NV 89145
(702) 816-3888 – Main
(702) 441-1257 – Fax
jeff@jeffjaeger.com

Attorneys for *Plaintiff Fight For Nevada*

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| FIGHT FOR NEVADA, </br></br>     Plaintiff, </br></br> v. </br></br> BARBARA CEGAVSKE, </br></br>     Defendant. | Case No.: 2:20-cv-00837-RFB-EJY </br></br> Judge: Hon. Richard F. Boulware, II </br></br> Magistrate: Hon. Elayna J. Youchah |

**REPLY IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR PRELIMINARY INJUNCTION AND/OR TEMPORARY RESTRAINING ORDER AND ATTACHED MEMORANDUM OF LAW IN SUPPORT**

Plaintiff Fight for Nevada, by and through its undersigned counsel, hereby submits its Reply in Support of its Emergency Motion for Preliminary Injunction And/Or Temporary Restraining Order.

**INTRODUCTION**

In her Response, The Secretary plays a game of musical chairs. This is not a question of state law. This is a question of Constitutional rights. The right to circulate petitions is being denied, and the right to access the ballot for a recall effort is being denied. The First Amendment, through the Fourteenth Amendment, protects both. Federal law gives this court jurisdiction. The official in charge of the ballot is the Defendant. Yet, the Defendant claims she is only enforcing a state law, when, in fact, she is also enforcing the Governor's Executive Orders that makes Constitutional compliance with that state law impossible. If the Governor was named, the Governor would say he is the wrong defendant, because he does not determine access to the ballot. The Secretary is named, and the Secretary pretends the Governor's Executive Orders do not exist, and she is merely enforcing state law. This "Alice in Wonderland" defense – let us all pretend the Governor's Executive Orders do not exist and let us all pretend the Secretary is not enforcing it as applies to access to the ballot -- should be rejected, and the Constitutional rights of the Plaintiff protected.

**LEGAL ARGUMENT**

**I.     Plaintiff is Entitled to Preliminary Relief.**

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC*, 129 S. Ct. 365, 374 (2008). In the Ninth Circuit, a party can also satisfy the first and third elements of *Winter* by raising serious questions going to the merits of the case and showing a balance of hardships that tips sharply in its favor. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011). When a motion for a preliminary injunction implicates the First Amendment, the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the restriction. *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1117 (9th Cir. 2011).

REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND/OR TRO

Here, the Plaintiff has made a colorable claim that its First and Fourteenth Amendment rights of freedom of speech, freedom to circulate petitions, the freedom to associate with others for the common advancement of political beliefs and ideas, and their right to access the ballot have been severely burdened by the combination of the Secretary's enforcement of NRS 306.015(3) and the Governor's Executive Orders. Meanwhile, the Secretary has mischaracterized the Plaintiff's requested relief and provided no concrete justification for denying the limited relief requested here. Accordingly, this Court should grant the Plaintiff's Motion for a Temporary Restraining Order/Preliminary Injunction.

II.     **Plaintiff Has a Strong Likelihood of Success on the Merits.**

    a.     **The Plaintiff's First and Fourteenth Amendment Rights Have Been Severely Burdened.**

The Secretary's response ignores the fundamental fact that the Plaintiff's First and Fourteenth Amendment rights have been severely burdened as a result of the Secretary's enforcement of NRS 306.015(3) and the Governor's Executive Orders. Furthermore, the Secretary entirely mischaracterizes this case as one about legislative process instead of voting rights.

"Discussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution. The First Amendment affords the broadest protection to such political expression in order 'to assure (the) unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" *Buckley v. Valeo*, 424 U.S. 1, 14 (1976), quoting *Roth v. United States*, 354 U.S. 476, 484 (1957). Although First Amendment protections are not confined to "the exposition of ideas," *Winters v. New York*, 333 U.S. 507, 510, (1948), "there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs … of course includ(ing) discussions of candidates …" *Mills v. Alabama*, 384 U.S. 214, 218, 86, (1966). This reflects our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open," *New York Times Co. v. Sullivan*, 376 U.S. 254, 270, 84 (1964). That broad protection for speech concerning governmental affairs, namely Governor's Sisolak's actions in office and whether or not the people of

Nevada wish to have a special election putting forward alternative candidates for that office, is at issue here.

The Secretary's actions further violate the Plaintiff's right to freedom of association. The First Amendment protects political association as well as political expression. The constitutional right of association explicated in *NAACP v. Alabama*, 357 U.S. 449, 460 (1958), stemmed from the Court's recognition that "(e)ffective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association." Subsequent decisions have made clear that the First and Fourteenth Amendments guarantee: "'freedom to associate with others for the common advancement of political beliefs and ideas,'" a freedom that encompasses "'(t)he right to associate with the political party of one's choice.' " *Kusper v. Pontikes*, 414 U.S. 51, 56, 57, (1973), quoted in *Cousins v. Wigoda*, 419 U.S. 477, 487 (1975). The Governor's Executive Orders make it not only impossible, but *illegal*, for the Plaintiff to effectively associate for the advancement of the recall campaign. Taken in concert with the Secretary's enforcement of NRS 306.015(3), Plaintiff will be completely stripped of its First and Fourteenth Amendment rights.

      b.    **NRS 306.015(3) is an Election Law Enforced by The Secretary of State and Subject to the *Anderson-Burdick* Balancing Inquiry.**

The Secretary's Response attempts to characterize this case as one about legislative process, when it is undeniably a case concerning the Secretary's enforcement of election law. The Secretary of State is responsible for overseeing state and local elections and "Certifies all statewide candidates and ballot questions and reports and certifies primary and general election results."[1] NRS 306.015 is found within Chapter 306 of the Nevada Revised Statutes under "Title 24 –ELECTIONS." Under NRS 306.060, et seq., a successful campaign for the recall of a public officer triggers a special election by which anyone may petition to nominate candidates for the special election. Thus, this case is

---

[1] Nevada Secretary of State "About the Office" found at https://www.nvsos.gov/sos/sos-information/office-facts/about-the-office

- 3 -
REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND/OR TRO

fundamentally one about access to the ballot, not obstruction of the legislative process as the Secretary's Response would have this Court believe.

In light of the above, when evaluating the state election law enforced by the Secretary, this Court must apply strict scrutiny under the test put forward *in Anderson v. Celebrezze*, 460 U.S. 780 (1983) and *Burdick v. Takushi*, 504 U.S. 428 (1992). This framework establishes a "flexible standard," according to which the rigorousness of the Court's inquiry into the propriety of a state election law depends upon the extent to which a challenged restriction burdens First and Fourteenth Amendment rights." *Burdick*, 504 at 434. Under this standard, "reasonable, nondiscriminatory restrictions" are subject to less exacting review, whereas laws that impose "severe" burdens are subject to strict scrutiny. *See id*. (citations omitted). Here, the burden is undeniably severe –Plaintiff will be completely stripped of its First and Fourteenth Amendment rights if the Secretary enforces NRS 306.015(3) under the current framework of Nevada law. Such "complete exclusion," constitutes a "severe" burden on the First and Fourteenth Amendment rights of the affected voters, candidates and parties, and cannot withstand strict scrutiny. Burdick, *Id*. at 434.

    **c.**    **This Court Has the Authority to Issue a Temporary Restraining Order/Injunction in this Case.**

The Secretary contends that this Court does not have the authority to instruct the Secretary to undertake actions to remedy the violation of Constitutional rights. (Response pg. 12). This is not true, and in fact, Courts across the country are beginning to issue injunctions preventing states from enforcing ballot access restrictions made unreasonable by the ongoing pandemic.

The Supreme Court has made clear that "[w]hen challenges to state action respecting matters of the administration of the affairs of the State and the officers through whom they are conducted have rested on claims of constitutional deprivation which are amenable to judicial correction," federal courts may act to address the merits of those claims. *Baker v. Carr* 369 U.S. 186, 229 (internal quotation marks and footnote omitted). Indeed, the Court repeatedly has held that a federal court may correct constitutional wrongs in areas generally within the purview of state lawmakers, and it has applied this

- 4 -
REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND/OR TRO

principle to the area of elections. In addition to *Baker*, *supra*, *see Rhodes*, 393 U.S. at 23, 28, 89 ("[The state's] claim that the political-question doctrine precludes judicial consideration of these cases requires very little discussion. That claim has been rejected in cases of this kind numerous times."); *Bond v. Floyd*, 385 U.S. 116, 130, 87 (1966) ("The State does not claim that it should be completely free of judicial review whenever it disqualifies an elected Representative; it admits that, if a State Legislature excluded a legislator on racial or other clearly unconstitutional grounds, the federal judiciary would be justified in testing the exclusion by federal constitutional standards."); *Reynolds v. Sims*, 377 U.S. 533, 585, (1964) ("[O]nce a State's legislative apportionment scheme has been found to be unconstitutional, it would be the unusual case in which a court would be justified in not taking appropriate action to insure that no further elections are conducted under the invalid plan."); *Wesberry v. Sanders*, 376 U.S. 1, 6–7, (1964) (noting that "nothing in the language of [the Elections Clause] gives support to a construction that would immunize state congressional apportionment laws which debase a citizen's right to vote from the power of courts to protect the constitutional rights of individuals from legislative destruction*"); Gomillion v. Lightfoot*, 364 U.S. 339, 344–45, (1960) (striking down municipal boundaries that impaired voting rights and concluding that "[l]egislative control of municipalities, no less than other state power, lies within the scope of relevant limitations imposed by the United States Constitution")

Courts around the country have responded to the ongoing pandemic by granting injunctions such as the one requested by Plaintiff. In *Libertarian Party of Illinois et al v. Pritzker et al*, No. 1:2020cv02112, the Libertarian Party of Illinois sued seeking to enjoin Governor Pritzker from enforcing those provisions of Illinois election law requiring third parties to gather a sufficient number of petition signatures to qualify for the 2020 general election ballot. In granting their request, the United States District Court for the Northern District of Illinois noted that the Libertarian Party's lawsuit did not "challenge the constitutionality of the ballot access restrictions in a vacuum," but rather "Plaintiffs have requested emergency injunctive relief on the ground that the extraordinary

circumstances arising from COVID-19, combined with the ballot access restrictions, violate their First and Fourteenth Amendment rights." *Id*. at pg. 7.

In order to respect social distancing guidelines implemented in response to the COVID-19 pandemic, numerous states have likewise reduced the number of signatures required for a candidate to be placed on the ballot. *See, e.g., Esshaki v. Whitmer*, No. 2:20-CV-10831-TGB, 2020 WL 1910154, at *12 (E.D. Mich. Apr. 20, 2020) (reducing the statutory signature requirement by 50 percent); *Goldstein v. Sec'y of Commonwealth*, No. SJC-12931, 2020 WL 1903931, at *9 (Mass. Apr. 17, 2020) (same); N.Y. Exec. Order No. 202.2 (Mar. 14, 2020) (reducing the statutory signature requirement to 30 percent of normal); H. 681, 2019–2020 Gen. Assemb., Adjourned Sess. (Vt. 2020) (suspending the statutory signature requirement entirely).

Here, the Secretary claims that this Court lacks the authority to correct her violation of Plaintiff's Constitutional rights, but offers the Plaintiff no alternative remedy. Without this Court's action, Plaintiff's First and Fourteenth Amendment rights will be violated, and any realistic recourse by Plaintiff will be obliterated.

### III.    Plaintiff Will Suffer Irreparable Harm if Preliminary Relief is Not Granted.

The Secretary's Response claims that Plaintiff will not suffer irreparable harm if denied injunctive relief in this case, because Plaintiff has other means to "criticize the Governor." (Response pg. 14). That statement underlines the complete mischaracterization of Plaintiff's claims found throughout the Secretary's Response. The Plaintiff is an official committee seeking the recall of public official under Nevada law, and in that respect is required to gather sufficient signatures in support of their effort pursuant to Nevada law. If Plaintiff is not provided emergency preliminary relief before the May 14, 2020 deadline established by NRS 306.015(3), they will not be able to meet the signature requirements established by the Nevada Constitution and their campaign for the recall of Governor Sisolak will be summarily denied. Nev. Const. Art. 2, Sec. 9. This will cause significant harm to Plaintiff's First and Fourteenth Amendment rights that necessarily cannot be adequately remedied

afterwards. *Anderson* at 787 (recognizing harm to voters' First Amendment rights of association when they are unable to vote for the candidates they support).

## IV. The Balance of Hardships Undeniably Favors the Plaintiff as the Defendant Will Suffer No Harm From an Extension Being Granted in this Case.

In her Response, the Secretary accuses Plaintiff of "seeking to exploit a public health emergency for its benefit", and claims that granting the Plaintiff injunctive relief would exacerbate the ongoing public health crisis. (Response pg. 15). This rhetoric is as empty as it is nonsensical. Plaintiff seeks an extension of its deadline equivalent to the duration of the State of Emergency, so that it may lawfully gather petition signatures in public venues after the emergency has ended. Further, Plaintiff is not seeking the complete invalidation of Nevada's laws regulating the process for the recall of a public official, as the Secretary's overbroad interpretation of the relief requested by Plaintiff attempts to advance. Plaintiff in this case merely seeks an extension of their deadline equivalent to the duration of Governor Sisolak's declaration of a State of Emergency, that made it impossible for Plaintiff to gather petition signatures in the first place.

In an attempt to adjust the hardship scale in her favor, the Secretary asserts that granting Plaintiff this extension will "compromise the state's ability to ensure that the recall proposal has adequate public support to warrant its inclusion on the ballot," yet provides no evidence for this claim. (Response pg. 14). Other actions taken by the State of Nevada imply the contrary. On April 1, 2020, in his revised Emergency Directive 009, Governor Sisolak mandated that any specific time limit set by state statute or regulation for the commencement of any legal action, would be tolled from the date of the directive until 30 days from the date the state of emergency declared on March 12, 2020 is terminated.[2] If Nevada can withstand such a sweeping stay of all legal deadlines for commencing legal

---

[2] A true and correct copy of Emergency Directive 009 can be found at:
http://gov.nv.gov/News/Emergency_Orders/2020/2020-04-01_-_COVID-19_Declaration_of_Emergency_Directive_009_(Revised)/

- 7 -
REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND/OR TRO

actions, then surely it can withstand the limited relief requested here – relief that will only affect the Plaintiff in this case.

## V. Preliminary Relief in in the Public Interest.

Contrary to the Plaintiff's implication otherwise, Plaintiff does not challenge the State's power to protect the health of its citizens. Plaintiff's recall campaign is a grassroots volunteer effort based on legitimate disputes with several of Governor Sisolak's public policies. Whether or not their campaign succeeds depends on whether or not they can obtain the signatures of 250,000 Nevadans who share their view. Nevadans have a right to decide whether or not they wish to sign on to Plaintiff's campaign, and a summary denial of this campaign due to a public health emergency completely outside of the Plaintiff's control, would deny them of this right. As the Third Circuit noted in an analogous case, "[i]n the absence of legitimate, countervailing concerns, the public interest clearly favors the protection of constitutional rights…" *Council of Alternative Political Parties*, 121 F.3d at 883-84.

## CONCLUSION

For the foregoing reasons, Plaintiff's request for a preliminary injunction and/or temporary restraining order that prohibits Defendant from enforcing or applying the May 14th deadline for submitting recall petitions and directs Defendant to grant an extension of Plaintiff's deadline to submit recall petitions by an amount of time equal to the duration of Governor Sisolak's State of Emergency related to the coronavirus pandemic, should be granted. Without immediate injunctive relief, Plaintiff's recall campaign will be shattered and their First and Fourteenth Amendment rights will be irreparably harmed.

DATED:  May 13, 2020                    Respectfully submitted,

/s/ Robert E. Barnes
Robert E. Barnes, CA SBN #235919
BARNES LAW
robertbarnes@barneslawllp.com

## CERTIFICATE OF SERVICE

I certify that on this 13th day of May, 2020, I filed and served with this Court's CM/ECF electronic filing system the foregoing REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND/OR TRO on the following parties:

Gregory Louis Zunino
Nevada State Attorney General's Office
100 N Carson Street
Carson City, NV 89701
775-684-1137
Fax: 775-684-1108
Email: GZunino@ag.nv.gov

/s/ Robert E. Barnes
Robert E. Barnes, CA SBN #235919
BARNES LAW
robertbarnes@barneslawllp.com

- 9 -
REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND/OR TRO