**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| FIGHT FOR NEVADA, | Case No. 2:20-cv-00837-RFB-EJY |
| Plaintiff, | **ORDER** |
| v. | |
| BARBARA CEGAVSKE, in her official capacity | |
| Defendant. | |

### I.   INTRODUCTION

Before the Court is Plaintiff Fight for Nevada's ("Plaintiff") Motion for a Temporary Restraining Order. ECF No. 5.  For the following reasons, the Court denies the motion.

### II.   PROCEDURAL BACKGROUND

Plaintiff filed its complaint on May 11, 2020 and its motion for a temporary restraining order on May 12, 2020. ECF Nos. 1, 5.  Defendant Barbara Cegavaske ("the Secretary") filed a response and accompanying declaration. ECF Nos. 10, 11. The Court heard oral argument on May 14, 2020.  This written order now follows.

### III.   FACTUAL BACKGROUND

Plaintiff Fight for Nevada is a registered committee for the recall of a public officer under section 294A.250 of the Nevada Revised Statutes ("NRS"). Defendant Barbara Cegavaske, as the current Nevada Secretary of State, is the officer in charge of implementing the recall process. Nev. Rev. Stat. § 293.124.  Pursuant to the Nevada Constitution, a petition to recall an elected officer must contain the signatures of at least 25% of the people who actually voted in the election of the official that the committee wishes to recall. Nev. Const. Art. 2, § 9. During the 2018 general election for Governor Sisolak—the official Plaintiff seeks to recall—975,980 votes were cast

statewide—meaning that Plaintiff needs at least 243,995 valid signatures to trigger a recall election.[1] Nevada statutes further provide that after the recall committee has filed its required notice of intent, it must submit its petition for signature verification no later than the 90th day after the notice of intent was filed. Nev. Rev. Stat. § 306.015(3)(b). For Plaintiff, the deadline for the petition to be submitted is therefore May 14, 2020, as the notice of intent was filed on February 14, 2020. Nevada law also requires that on or before the 48th day after the notice of intent, the recall committee submit the signatures that it has collected thus far. Nev. Rev. Stat. § 306.015 (3)(a). The midpoint for Plaintiff was March 30, 2020. By March 30, 2020, Plaintiff had submitted 15,892 signatures to the Secretary of State, about 6.5% of the signatures necessary for Plaintiff to submit by May 14, 2020.

Plaintiff contends that it cannot comply with the signature deadlines of NRS 306.015 because of emergency directives that Governor Sisolak has issued in response to the coronavirus pandemic. Plaintiff specifically cites Emergency Directive 003, which closed all business deemed "non-essential," and Emergency Directive 010, which ordered individuals to refrain from leaving their residences except for certain essential purposes.[2] On April 2, 2020, the Secretary of State confirmed that she would not extend any deadlines for submitting petitions for the recall of a public officer because she believed that she lacked the legal authority to extend the deadlines.

Plaintiff now brings claims under 42 U.S.C. §1983, alleging violations of its First and Fourteenth Amendment rights to free speech, political association, equal protection and due process. Plaintiff also filed its TRO, seeking an order from this Court that would prevent the Secretary from enforcing or applying the May 14 deadline and would direct the Secretary to grant an extension of the deadline by an amount of time equal to the duration of the Governor Sisolak's State of Emergency.

---

[1] Plaintiff alleges in its complaint that the number of signatures required is actually 249,500. Pl.'s Compl. ¶ 9. As neither party disputes that Plaintiff currently has signatures well below the required amount, the Court finds this discrepancy immaterial.

[2] See Decl. of Emergency for Covid-19 Directive 003, http://gov.nv.gov/News/Emergency_Orders/2020/2020-03-20_-_COVID-19_Declaration_of_Emergency_Directive_003_(Attachments)/ (last visited May 13, 2020); Decl. of Emergency Directive 010 Stay at Home Order, http://gov.nv.gov/News/Emergency_Orders/2020/2020-03-31_-_COVID-19_Declaration_of_Emergency_Directive_010_-_Stay_at_Home_Order_(Attachments)/ (last visited May 13, 2020).

### IV. LEGAL STANDARD

The analysis for a temporary restraining order is "substantially identical" to that of a preliminary injunction. Stuhlbarg Intern. Sales Co, Inc. v. John D. Brush & Co., Inc., 240 F.3d 832, 839 n.7 (9th Cir. 2001). A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, a plaintiff must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that the public interest favors an injunction." Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc., 758 F.3d 1069, 1071 (9th Cir. 2014), as amended (Mar. 11, 2014) (citing Winter, 555 U.S. 7, 20 (2008)). A preliminary injunction may also issue under the "serious questions" test. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134 (9th Cir. 2011) (affirming the continued viability of this doctrine post-Winter). According to this test, a plaintiff can obtain a preliminary injunction by demonstrating "that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor," in addition to the other Winter elements. Id. at 1134-35 (citation omitted).

### V. DISCUSSION

The Court denies Plaintiff's motion for temporary restraining order for failure to show a likelihood of success on the merits of its claims or irreparable injury. The parties primarily dispute the following: 1) whether the Court has subject matter jurisdiction over this case; 2) whether the Court has the authority to grant the injunctive relief sought; 3) whether Plaintiff has articulated a violation of its First and Fourteenth Amendment rights; and 4) whether Plaintiff has sufficiently established irreparable harm. The Court addresses these issues in turn.

   a. **Subject Matter Jurisdiction**

In her response, the Secretary of State first argues that this Court lacks subject matter jurisdiction over Plaintiff's dispute. The Secretary argues that Plaintiff does not present any federal claims and only raises questions of state law, because the right to recall a public officer arises from

- 2 -

the Nevada constitution only. Def.'s Opp. 12. The Court disagrees. Plaintiff invokes the First and Fourteenth Amendments rights to free speech, political association and to vote. When a complaint invokes federal question jurisdiction, the Court may dismiss federal question claims for lack of subject matter jurisdiction only if "(1) the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction; or (2) such a claim is wholly insubstantial and frivolous." Leeson v. Transamerica Disability Income Plan, 671 F.3d 969, 975 (9th Cir. 2012) (citing Bell v. Hood, 327 U.S. 678, 685 (1946)). While the Court ultimately agrees with the Secretary that Plaintiff has not established a likelihood of success or a serious question going to the merits of its claims, the Court does not find that Plaintiff's claims are so frivolous as to strip the Court of its jurisdiction to hear the case. The Court therefore proceeds to consider and render its decision on the motion for a temporary restraining order.

### b. Authority of Court to Grant Plaintiff's Requested Relief

Plaintiff seeks an order that not only declares the provisions of NRS 306.015 and Governor Sisolak's emergency directives unconstitutional as applied to it, but that would also extend the deadline by which Plaintiff must submit its petition by the number of days that Governor Sisolak's emergency directives are in effect. In other words, Plaintiff wishes the Court to order the Secretary to extend the deadline indefinitely. Private citizens may seek prospective injunctive relief against state officials acting in their official capacity. Sofamor Danke Grp, Inc v. Brown, 124 F.3d 1179, 1185 (9th Cir. 1997). However, that injunctive relief must be narrowly tailored against the official with the authority to enforce the relevant law. Id.; Coalition to Defend Affirmative Action v. Brown, 674 F.3d 1128, 1134 (9th Cir. 2012). Plaintiff has also sued only the Secretary in her official capacity and does not contend that NRS 306.015 is unconstitutional on its face, but only as-applied to Plaintiff in light of Governor Sisolak's emergency directives. The emergency directives are not election regulations and the Secretary is not the party who enforces such directives. While the Court certainly has the ability to declare state laws unconstitutional as applied, the Court does not find that the record in this case establishes a legal basis for the Court to order the Secretary to extend the deadline. As the Court does not find that Plaintiff has established a likelihood of success on the merits or irreparable injury, ultimately the Court need

not decide here whether the Court could ever have the authority to order the Secretary to extend the deadline in a specific case.

### c. Likelihood of Success on the Merits: Ballot-Access and Applicability of Anderson-Burdick

Plaintiff avers that this case is "fundamentally a ballot access case[3]," because "a successful recall campaign triggers a special election by which anyone may petition to nominate candidates for the special election." Pl.'s Mot. TRO 5 n.3. Ballot access cases focus on the degree to which a challenged state restriction operates as a mechanism "to exclude certain classes of candidates from the electoral process." Anderson v. Celebrezze, 460 U.S. 780, 793 (1983). To address the "inevitable tension between a state's authority and need to regulate its elections and the First and Fourteenth Amendment rights of voters, candidates, and political parties," courts employ a flexible standard of review of constitutional challenges to ballot access. Arizona Libertarian Party v. Hobbs, 925 F.3d 1085, 1090 (9th Cir. 2019). First, the Court weighs the character and magnitude of the asserted injury to the plaintiff's First and Fourteenth Amendment rights against the precise interests put forward by the State as justifications for the burden imposed by the rule, while taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights. Id. citing Burdick v. Takushi, 504 U.S. 428, 434 (1992)). The more severe the burden imposed, the more exacting the scrutiny. Id. To pass constitutional muster," a state law imposing a severe burden must be narrowly tailored to advance compelling interests." Id. citing Norman v. Reed, 502 U.S. 279, 289 (1992). If, however, the burden imposes a minimal burden, then so long as the regulation reasonably advances important interests it is reasonable. Id.

As a preliminary matter, the Court does not find that Plaintiff has sufficiently established that it has a cognizable ballot-access claim. While there is certainly a federal protected right to vote and to associate for political purposes, the Court is not convinced that Plaintiff has adequately demonstrated that such federally protected rights extend to the filing of recall petitions. Although

---

[3] Plaintiff's pleading of its First and Fourteenth Amendment claims is somewhat broad—Plaintiff asserts violations of its freedom of speech and association, equal protection and due process in its complaint. Pl.'s Compl. ¶ 53. However, Plaintiff does not brief or otherwise address any equal protection or due process arguments and frames its claims as fundamentally   ballot-access claims, which implicate the First Amendment rights to vote, speech and association. See Anderson v. Celebrezze, 460 U.S. 780, 806 (1983). The Court therefore does not address the equal protection and due process aspects of Plaintiff's claims and examines only the viability of its ballot-access case.

the Ninth Circuit has not explicitly weighed in on the question of whether the law regulating the initiation of a recall petition implicates ballot access and First Amendment voting rights, the Nevada Supreme Court has. In Strickland v. Waymire, Nevada citizens sued and challenged the recall provision of the Nevada Constitution that requires signatures from 25% of the electorate to vote in the election. 235 P.3d 605 (Nev. 2010). The citizens argued that to require the signatures to be from citizens who *actually* voted in the prior election that elected the target official, rather than just registered voters who *could* have voted in the election, would abridge voters' "fundamental right to have access to the ballot." Id. at 609, 613. The Nevada Supreme Court disagreed, noting that such an argument "conflates the right to submit a petition calling for recall with the right to vote at the special election that follows, which are two different things." Id. The Nevada Supreme Court further explained that:

> As to the initiating petition itself, the state has an important interest in promoting the efficient regulation of recall petitions so that some sort of order, rather than chaos accompanies the process, and so that a costly special election at the taxpayers' expense ahead of the next-scheduled election is not called except as provided in the state constitution. Id. at 613 (citing Citizens for Honest & Responsible Gov't v. Sec'y of State, 11 P.3d 121, 127 – 28 (Nev. 2000).

The Court agrees with this reasoning. Here, as in Strickland, Plaintiff appears to be conflating the right to submit a recall petition with the right to vote in the special election that follows it. The Court therefore does not find that the Anderson-Burdick jurisprudence provides the appropriate constitutional inquiry here.

However, even if the Court *was* to find that Plaintiff has raised a ballot-access claim such that the Anderson-Burdick framework applies, the Court nevertheless concludes that the election regulations at issue would withstand rational basis review and are not subject to strict scrutiny. Plaintiff has not presented evidence sufficient to demonstrate a severe burden on any First Amendment right. Plaintiff offers the conclusory statement that, "it will be completely stripped of its First and Fourteenth Amendment rights if the Secretary enforces NRS 306.015(3) under the current framework of Nevada law," and that "[b]ecause . . . Nevada has failed to establish an alternative procedure by which Plaintiff may circulate petitions for their campaign, Nevada's petition requirements are unconstitutional." Pl.'s Repl. 4; Pl.'s Mot. TRO 7.  But Plaintiff does not

set forth or establish in the record facts that support its broad assertion of constitutional deprivation. As Plaintiff acknowledged at the hearing on its motion, nothing prevents Plaintiff from filing another notice of intent and filing another petition should the deadline for this petition lapse. Nev. Const. art. 2 § 9 (no recall petition can be filed against the same officer after a valid petition and special election has been held). Plaintiff has not established facts in this record that would provide a basis for the Court to conclude that it would somehow be severely or substantially burdened by having to restart the petition process. While the Court can envision that there would be some additional expense to restarting the process, Plaintiff has failed to set forth facts establishing the extent of such additional expense or time. While Plaintiff seemed to suggest at oral argument that having access to large gatherings of voters in public places would facilitate its collection of signatures, it did not establish in the record that such public gatherings were in fact a substantial or significant part of its collection of signatures in this case. Indeed, the Court notes that Plaintiff submitted no affidavits detailing what expenses were incurred in gathering the signatures already procured, where the signatures were collected, and what additional burdens would be imposed on Plaintiff's members if they are not able to proceed now. The Court does not find that an inability to file this particular recall petition presents a severe burden when Plaintiff has not established with any detail what additional burden or inconvenience it faces if the Secretary does not extend the deadline. Because the Court does not find that Plaintiff has sufficiently demonstrated a severe burden, the Court declines to apply strict scrutiny. See Short v. Brown, 893 F.3d 671, 677 (9th Cir. 2018) (declining to apply strict scrutiny after plaintiff failed to establish a severe burden).

Declining to apply strict scrutiny, the Court finds that the signature requirements and deadlines, and the executive directives, survive rational basis review. To survive rational basis review, Nevada must have an important regulatory interest that justifies the burden. The Court finds that both the signature deadlines and the governor's executive directives serve important regulatory interests. The signature requirement deadlines serve to "notify elected officials of the relevant time periods involved and discourage[] frivolous and harassing petitions," Citizens for Honest & Responsible Gov't v. Sec'y of State, 11 P.3d 121, 128 (Nev. 2000), and promote the government's general interest in ensuring that "order, rather than chaos . . . accompany the

democratic process." See also Burdick, 504 U.S. 428, 433 (1992) (citing Storer v. Brown, 415 U.S. 724, 730 (1974). The emergency stay-at-home orders comport with the state's well-established power to regulate public health emergencies. See Jacobson v. Commonwealth of Mass., 197 U.S. 11, 27 (1905) (noting that "[A] community has the right to protect itself against an epidemic of disease which threatens the safety of its members" and upholding compulsory vaccination law); Mackey v. Montrym, 443 U.S. 1, 17- 18 (1979) ("We have traditionally accorded the states great leeway in adopting summary procedures to protect public health and safety."). The Court therefore finds that the regulations comports with legitimate government objectives and do not violate the Plaintiff's constitutional rights based on the record in this case.

Plaintiff cites to other district court judges that have relaxed signature requirements in response to the coronavirus pandemic. In addition to not being binding precedential law in this district, the cases Plaintiff cites are distinguishable. In each of the cases cited, the circumstances involved relaxing signature requirements that were required to get *a candidate on the ballot of a scheduled general or primary election*. Esskahi v. Whitmer, No. 2:20-cv-10831-TGB, 2020 WL 1910154, at *1 (E.D. Mich. Apr. 20, 2020) (granting preliminary injunctive relief that lowered 50% minimum number of signatures required for candidates to be included on primary ballot and extending by one month time period for obtaining signatures); Libertarian Party of Illinois v. Pritzker, No. 20-cv-2112, 2020 WL 1951687, at *1, * 4 - *5 (N.D. Ill. April 23, 2020)(adopting a joint proposed order that relaxed signature requirements so that candidates seeking to appear on the general election ballot in November could comply); Goldstein v. Sec'y of Commonwealth, 141 N.E.3d 560 (Mass. 2020) (finding that minimum signature requirements as applied to candidates seeking to appear on the primary ballot were unconstitutional). These cases are thus very different from Plaintiff's situation, which concerns not access to either the primary or general election but the ability to file a recall petition that possibly triggers a special election. The Ninth Circuit has recognized the right to access the primary ballot, "given the obvious and strong interconnection between primary and general elections, which together operate as a 'single instrumentality for choice of officers." Hobbs, 925 F.3d 1085, 1094 (9th Cir. 2019).  However, the Ninth Circuit has never recognized a First Amendment right to file a recall petition.

The Ninth Circuit has also never recognized a First Amendment right to place an initiative on the ballot, which is perhaps more analogous to Plaintiff's quest to trigger a recall election than candidate access to a primary or general election ballot. Angle v. Miller, 673 F.3d 1122, 1133 (9th Cir. 2012) (noting there is " no First Amendment right to place an initiative on the ballot").  The Court will therefore examine Plaintiff's claim under Angle.

### d. Likelihood of Success on the Merits: Angle and Restrictions on Core Political Speech

The Court finds that the Plaintiff's recall petition challenge is most analogous to the initiative or referendum framework set forth in Angle. In Angle, the Ninth Circuit considered a facial constitutional challenge to  Nevada's All Congressional Districts Rule, which required proponents of any direct legislation initiative to obtain petition signatures from registered voters equal to 10% of the votes cast in the previous general election. Id. In considering the plaintiffs' First Amendment challenge to provision, the Ninth Circuit acknowledged that election regulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling interest. Angle, 673 F.3d at 1132 (citing Prete v. Bradbury, 438 F.3d 949, 961 – 962 (9th Cir. 2006)). Although the Angle court acknowledged that there is no First Amendment right to place an initiative on the ballot, restrictions on the initiative process could nevertheless burden core political speech. Id. at 1133 (recognizing that although "there is no First Amendment right to place an initiative on the ballot . . . [s]uch regulations, however, may indirectly impact core political speech."). Regulations that made it more difficult to place an initiative on the ballot could burden core political speech because when an initiative was not placed on the ballot, it does not become "the focus of statewide discussion." Id. citing Meyer v. Grant, 486 U.S. 414, 423 (1988)). For that reason, the Angle court held that the ballot access restrictions place a severe burden on core political speech and trigger strict scrutiny when they significantly inhibit the ability of initiative proponents to place initiatives on the ballot. Id. The court borrowed from jurisprudence on ballot access restrictions regarding candidates to find that the "burden on plaintiff's rights should be measured by whether, in light of the entire statutory scheme . . . 'reasonably diligent candidates' can normally gain a place on the ballot, or whether they will rarely succeed in doing so." Id. at

1133. In concluding that Nevada's All District's rule did *not* pose a severe burden, the Angle court found that the plaintiffs had failed to establish a severe burden, because they has provided only speculative, as opposed to well-substantiated evidence, that despite reasonably diligent efforts, they and other initiative proponents had been unable to qualify initiatives for the ballot as a result of the All Districts Rule. Id.

The Court does note that the recall petition is still somewhat distinguishable from a ballot initiative or referendum. In Meyer v. Grant, the Supreme Court case that established that circulating a petition constitutes core political speech, the Supreme Court noted that initiative petition circulation constituted core political speech because petition circulation in that context required the petition circulator to convince prospective signatories that "the matter is one deserving of the public scrutiny and debate that would attend its consideration by the whole electorate." Meyer, 486 U.S. at 421. Restrictions to initiative petition signatures, the Court explained, could limit "the[] ability to make the matter the focus of statewide discussion." Id. When a ballot initiative or candidate petition fails to get enough signatures, that ballot initiative or that candidate may never be considered by the statewide electorate. By contrast, if a recall petition fails to get enough signatures to trigger a special election, the statewide process and discussion of the elected official's fitness for office will still occur—just not necessarily at the speed or at the general election that the recall committee may prefer. While the Court acknowledges this distinction, the Court still finds that in this case the Angle framework is sufficiently analogous to apply here.

Applying the Angle inquiry to the record in this case, the Court still finds that Plaintiff has not established a likelihood of success on the merits of its First Amendment violation claim. The Court does not find that Plaintiff has met its showing to demonstrate that the signature requirements of NRS 306 and emergency directives impose a severe burden on core political speech. Plaintiff filed its notice of intent on February 14, 2020. While the governor first declared a state of emergency on March 12, 2020, the first stay-at-home order did not go into effect until March 30, 2020, which coincidentally was also the mid-point for Plaintiff's petition. At that point, Plaintiff had gathered just 15, 892 signatures—far below the 243,995 required signatures. That Plaintiff was already so far from its goal by March 30, 2020 gives less credence to the argument

1  that the emergency directives, as opposed to other reasons, such as a lack of diligence, prevented
2  Plaintiff from acquiring the requisite signatures. Plaintiff has not argued or established that the
3  deadline itself could never be satisfied and is therefore facially unconstitutional. And, as previously
4  stated, Plaintiff submitted no affidavits in support of its motion from anyone with personal
5  knowledge to explain what costs Plaintiff already incurred and why the orders further burdened
6  Plaintiff.  Finally, even if Plaintiff fails to get the requisite signatures, nothing prevents Plaintiff
7  from filing another notice of intent and beginning the process anew. Plaintiff already possesses the
8  names and addresses of some 15,000 signatories who presumably would still support Plaintiff's
9  recall efforts. In light of these facts, the Court cannot conclude that Plaintiff has demonstrated that
10 it and other reasonably diligent recall petition circulators are severely burdened by NRS 306.015
11 and Governor Sisolak's emergency directives.  Accordingly, the Court applies rational basis
12 review and finds that the regulations pass constitutional muster for reasons the Court has
13 previously articulated.

### e. Irreparable Harm

15 The reasons why the Court finds that Plaintiff cannot adequately establish a severe burden
16 on its First Amendment rights are also why the Court does not find that Plaintiff has established
17 irreparable harm. The deprivation of a constitutional right is sufficient to establish irreparable
18 injury. Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012) (internal citation omitted). But
19 here the Court finds that plaintiff has not established a deprivation of a constitutional right.
20 Accordingly, Plaintiff has not established irreparable injury.

21 Because the Court does not find that Plaintiff has established a likelihood of success on the
22 merits of its First and Fourteenth Amendment claims under Anderson-Burdick or Angle  and has
23 not established irreparable injury, the Court denies the motion for a temporary restraining order.

26 //

- 2 -

## VI.  CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Temporary Restraining Order (ECF No. 5) is DENIED.

**DATED**: <u>May 15, 2020</u>.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**